1
2
3
4
5
6
7                          IN THE UNITED STATES DISTRICT COURT

8                          FOR THE EASTERN DISTRICT OF CALIFORNIA

9
10
11    KEVIN ALLEN,

12                    Plaintiff,                    No. 2:12-cv-1583  AC P

13            vs.

14    T. VIRGA, et al.,                             ORDER &

15                    Defendants.                   FINDINGS AND RECOMMENDATIONS

16    _____/

17            Plaintiff is a California inmate proceeding pro se with a civil rights action

18    pursuant to 42 U.S.C. § 1983.  Plaintiff, who describes himself as "a follower of Yahweh,"

19    alleges that defendants Virga and Korik, respectively the warden and the Jewish chaplain at

20    CSP-Sac, violated his First Amendment religious rights by denying him a kosher diet.  He seeks

21    declaratory and injunctive relief as well as nominal and punitive damages.  Pending before the

22    court are fully-briefed motions to dismiss by defendant Virga (ECF No. 14) and defendant Korik

23    (ECF No. 22).  Both motions assert the statute of limitations and qualified immunity.  Defendant

24    Virga also contends that plaintiff has failed to state a claim against him.

25    ////

26    ////

                                                  1

1 <u>STATUTE OF LIMITATIONS</u>

2        Both defendants contend that this action is untimely under California's two-year

3 statute of limitations for personal injury actions, and that plaintiff is not entitled to California's

4 two-year tolling provision for prisoners because he is  sentenced to a term of life with the

5 possibility of parole.

6        Actions brought pursuant to 42 U.S.C. § 1983 are governed by the forum state's

7 statute of limitations for personal injury actions.  <u>Wilson v. Garcia</u>, 471 U.S. 261, 265 (1985);

8 <u>Jones v. Blanas</u>, 393 F.3d 918, 927 (9th Cir. 2004).  In California, a two-year statute of

9 limitations applies.  <u>See</u> Cal. Code Civ. P. § 335.1; <u>Jones</u>, 393 F.3d at 927.  The federal court

10 also apples the forum state's law regarding tolling, including equitable tolling when not in

11 conflict with federal law.  <u>Hardin v. Straub</u>, 490 U.S. 536, 537-39 (1989); <u>Fink v. Shedler</u>, 192

12 F.3d 911, 914 (9th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1117 (2000).  California provides that the

13 applicable limitations period is tolled for two years on grounds of "disability" when a litigant is

14 incarcerated.  Cal. Code Civ. P. § 352.1(a).  This tolling provision operates to delay the running

15 of the limitations period.  <u>Carlson v. Blatt</u>, 87 Cal. App. 4th 646, 650 (2001) (imprisonment tolls

16 running of limitations period for two years from accrual of cause of action); <u>Fink</u>, 192 F.3d at

17 914 (same); <u>Ellis v. City of San Diego</u>, 176 F.3d 1183, 1189 (9th Cir. 1999) (same).

18        Each defendant argues separately that plaintiff is not entitled to the two-year

19 prisoner litigant tolling provision because plaintiff is a state prisoner sentenced to a life term

20 with the possibility of parole.  Prior to 1995, most California prisoners were entitled to tolling for

21 the entire term of their imprisonment.  <u>See</u> <u>Grasso v. McDonough Power Equipment, Inc</u>., 264

22 Cal. App. 2d 597 (1968)); <u>see also</u> <u>Ellis</u>, 176 F.3d at 1189 (before 1995, "California law

23 provided for unlimited tolling during incarceration.").  However, enactment of Cal. Code Civ. P.

24 § 352.1(a) limited the period of tolling to two years.  <u>Johnson v. State of California</u>, 207 F.3d

25 650, 654 (9th Cir. 2000); <u>Ellis</u>, 176 F.3d at 1189.  "The California courts have read out of the

26 statute the qualification that the period of incarceration must be 'for a term less than for life' in

1 order for a prisoner to qualify for tolling." Jones, 393 F.3d at 927 n. 5 (citing Grasso, 264

2 Cal.App.2d 597, and noting Martinez v. Gomez, 137 F.3d 1124, 1126 (9th Cir.1998)

3 (recognizing Grasso's continuing vitality)).  Accordingly, plaintiff is correct that he was entitled

4 to the two-year tolling provision § 352.1.  Hence, plaintiff had four years from the date of

5 accrual of the cause of action to file his complaint.

6        Federal law governs when a cause of action accrues in the § 1983 context.

7 Cabrera v. City of Huntington Park, 159 F.3d 374, 379 (9th Cir. 1998).  A § 1983 claim accrues

8 when the plaintiff knows or has reason to know of the injury which is the basis of the action.

9 Knox v. Davis, 260 F.3d 1009, 1012-13 (9th Cir. 2001).  In his complaint dated June 11, 2012

10 (and docketed in this court on June 13, 2012),[1] plaintiff complains that defendants denied him a

11 kosher diet at CSP-Sac.  The allegations do not include relevant dates, but plaintiff attached and

12 incorporated by reference his administrative appeal of the diet issue.  See ECF No. 1 at 2-3, 7-

13 16.  The inmate appeal form is dated December 9, 2010 and claims that it is the fifth such appeal

14 of the matter.  Alleged non-responsiveness to plaintiff's prior appeals and requests to meet with

15 the Jewish chaplain are part of the substance of the grievance.  In his appeal plaintiff explains

16 that he had been appealing the kosher diet issue at Corcoran State Prison before his transfer to

17 CSP-Sac, and implies that the problem was ongoing since his arrival at CSP-Sac.  Id. at 9-10.

18 Defendant Korik provides and requests judicial notice of plaintiff's CDCR movement history,

19 which establishes that plaintiff was transferred from Corcoran to CSC-Sac on September 29,

20 2009.[2]  Accordingly, the claims cannot have accrued prior to that date.

21

22     [1] The date on plaintiff's proof of service controls for purposes of timeliness analysis.
See Houston v. Lack, 487 U.S. 266, 275-76 (1988 ) (pro se prisoner filing is dated from the date

23 prisoner delivers it to prison authorities); Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009)
(holding that "the Houston mailbox rule applies to § 1983 complaints filed by pro se prisoners").

24

25     [2] See ECF No. 35 & Ex. A.  The court grants the request because the existence and
substance of the authenticated document "can be accurately and readily determined from sources

26                                                  (continued...)

1    Because the claims against these defendants necessarily accrued after plaintiff's

2    September 29, 2009 arrival at CSP-Sac, and the complaint was filed less than three years

3    thereafter, the complaint is not untimely.

4    Moreover, plaintiff is entitled to equitable tolling for the time he was exhausting

5    his administrative remedies.  See Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005).

6    Plaintiff's inmate appeal was submitted on December 9, 2010 and denied at the final, Director's

7    Level on June 16, 2011.  ECF No. 1 at 7, 15.  Even if plaintiff's two-year period of tolling under

8    § 352.1(a) expired during the pendency of his inmate appeal, the time until the appeal was

9    decided at the Director's Level would also be excluded from the limitations period.  Plaintiff

10   filed his complaint less than one year after exhausting his administrative remedies.  The

11   complaint is therefore timely.

12                    FAILURE TO STATE A CLAIM AS TO DEFENDANT VIRGA

13                    *Legal Standard for Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)*

14   In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

15   a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

16   it must contain factual allegations sufficient to "raise a right to relief above the speculative

17   level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "The pleading must contain

18   something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally

19   cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice and

20   Procedure § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual

21

22      [2](...continued)
        whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Moreover, a court may
23      take judicial notice "of the records of state agencies and other undisputed matters of public
        record" without transforming a motion to dismiss into a motion for summary judgment.
24      Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 n. 1 (9th Cir.
        2004); Hotel Employees and Restaurant Employees Local 2 v. Vista Inn Management Co., et al.,
25      393 F. Supp.2d 972, 978 (N.D. Cal. 2005); see also Mullis v. United States Bank, 828 F.2d 1385,
        1388 (9th Cir.1987) (court may consider facts subject to judicial notice on a 12(b)(6) motion to
26      dismiss).

                                                         4

1  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>,

2  556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).  "A claim has facial plausibility

3  when the plaintiff pleads factual content that allows the court to draw the reasonable inference

4  that the defendant is liable for the misconduct alleged."  <u>Id.</u>

5       In considering a motion to dismiss, the court must accept as true the allegations of

6  the complaint in question, <u>Hospital Bldg. Co. v. Rex Hospital Trustees</u>, 425 U.S. 738, 740

7  (1976), construe the pleading in the light most favorable to the party opposing the motion and

8  resolve all doubts in the pleader's favor.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421, <u>reh'g denied</u>,

9  396 U.S. 869 (1969).  The court will "'presume that general allegations embrace those specific

10 facts that are necessary to support the claim.'" <u>National Organization for Women, Inc. v.</u>

11 <u>Scheidler</u>, 510 U.S. 249, 256 (1994) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561

12 (1992)).  Moreover, pro se pleadings are held to a less stringent standard than those drafted by

13 lawyers.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).

14       The court may consider facts established by exhibits attached to the complaint.

15 <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also

16 consider facts which may be judicially noticed, <u>Mullis v. United States Bankruptcy Ct.</u>, 828 F.2d

17 828 F.2d 1385, 1388 (9th Cir.1987), and matters of public record including pleadings, orders,

18 and other papers filed with the court, <u>Mack v. South Bay Beer Distributors</u>, 798 F.2d 1279, 1282

19 (9th Cir. 1986).  The court need not accept legal conclusions "cast in the form of factual

20 allegations."  <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

21       A pro se litigant is entitled to notice of the deficiencies in the complaint and an

22 opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.

23 <u>See</u> <u>Noll v. Carlson</u>, 809 F. 2d 1446, 1448 (9th Cir. 1987).

24          <u>*Allegations of the Complaint*</u>

25       The complaint alleges that defendant Virga "is the warden of CSP-Sacramento.

26 He is legally responsible for the operation of California State Prison Sacramento, and for the

5

1   welfare of all the inmates of that prison." ECF No. 1 at 2.  The complaint specifies that "each

2   defendant is being sued in their individual capacities. . . " Id.  In a brief paragraph captioned

3   "Facts," plaintiff alleges that "the Defendants continuously ignored plaintiff's requests, and later

4   denied plaintiff the right to a religious meal according to 'Jewish Kosher Diet,' the closest, and

5   proper meals per plaintiff's religious beliefs." Id. at 3.

6         The exhibits indicate that plaintiff claimed in his inmate appeal to have sent two

7   requests to the warden concerning the rabbi and "the appeals person," regarding his appeals of

8   the religious diet matter not being addressed. ECF No. 1 at 9.   At the second level of review,

9   Virga reviewed the appeal and designated a correctional counselor to conduct an inquiry on his

10  behalf. Id. at 13.

11         *Analysis*

12         As defendant Virga points out, the complaint purports to proceed against him only

13  in an individual capacity but references him largely in an official capacity context.  Because

14  plaintiff is a pro se litigant, his filings are to be "liberally construed" and "held to less stringent

15  standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007)

16  (internal citation/quotations omitted); Ashker v. California Dept. of Corr., 112 F.3d 392, 395

17  (9th Cir. 1997) (liberally construing pro se prisoner complaint suing defendants in their official

18  capacities as suing them, as a first alternative, in their individual capacities); Rupe v. Cate, 688

19  F. Supp. 2d 1035, 1043 (E.D. Cal. 2010) ("[b]ecause Plaintiff is proceeding pro se, the Court

20  interprets his claims liberally as against all Defendants in both capacities.") (citing Karim-Panahi

21  v. L.A. Police Dept., 839 F.2d 621, 623 (9th Cir.1998)).  Plaintiff's prayer for injunctive relief

22  supports construction of the claim against Virga at least in part as an official capacity claim. See

23  Flint v. Dennison, 488 F.3d 816, 825 (9th Cir. 2007) (state officials may be sued in official

24  capacity for injunctive relief).  Because this court finds that plaintiff's injunctive relief claims

25  have been rendered moot for reasons explained below, however, the Rule 12(b)(6) analysis

26  properly focuses on plaintiff's claims against Virga in an individual capacity.

6

1    Virga is not liable for the conduct of subordinates by virtue of his role as Warden.

2    Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989) (vicarious liability theories inapplicable

3    under § 1983).  Accordingly, plaintiff's allegation that Virga is legally responsible for prison

4    operations and for the welfare of inmates is insufficient without more to link Virga to the alleged

5    deprivation of religious rights.  Supervisory liability must be predicated on (1) a supervisor's

6    personal involvement in a constitutional deprivation, including knowing of and failing to act to

7    prevent it; or (2) the existence of "a sufficient causal connection between the supervisor's

8    wrongful conduct and the constitutional violation."  Id.; Taylor v. List, 880 F.2d 1040, 1045 (9th

9    Cir. 1989).  "[O]vert personal participation in the offensive act" is not requisite if a supervisory

10   official implements "a policy so deficient" it constitutes "a repudiation of constitutional rights"

11   which is "the moving force of the constitutional violation."  Hansen, 885 F.2d at 646  (internal

12   citation omitted).

13       Plaintiff has not specifically alleged a causal link between Virga and the alleged

14   constitutional deprivation.  In opposition to the motion, plaintiff explains that defendant Virga

15   has the final authority over a prisoner's request for access to a religious diet at CSP-Sac, based

16   on the recommendation of a chaplain, and that he is therefore personally responsible for plaintiff

17   having been denied his First Amendment right to a kosher meal.  Plaintiff also maintains that

18   defendant Virga in reviewing his appeal was required at a minimum to assign plaintiff one of the

19   religious diet alternatives provided for by prison regulations.[3]  Finally, plaintiff contends that

20   defendant Virga had been put on notice that House of Yahweh Yahdaim adherents, such as

21   himself, were to be allowed access to the Jewish kosher meal program by direction of former

22   CDCR Secretary Matthew Cate, pursuant to a federal court order and permanent injunction.

23   Opp., ECF No. 27 at 16.  Plaintiff includes a request for judicial notice of the subject injunction

24

25       [3] Under 15 Cal. Code Regs. § 3054(e)(1 - 3), in addition to Jewish kosher, there are to be
     two other religious diet options provided in state prisons: "[v]egetarian" and "[r]eligious meat
     alternate."  Plaintiff states that there was no Jewish chaplain at Pelican Bay State Prison, and he

26   had no choice but to partake of a vegetarian diet when he was there.  ECF No. 1 at 7, 9.

1   in <u>Robinson v. Delgado</u>, No.1:02-cv-1538 NJV (N.D. Cal. 2008). <u>Id.</u> at 16, 43-45.

2          While defendant is correct that facts outside the complaint and exhibits are not

3   relevant to the question whether the claim as pleaded satisfies Rule 12(b)(6), plaintiff's proffer

4   of additional facts is relevant to the propriety of amendment. <u>See</u> <u>Noll</u>, 809 F. 2d at 1448.

5   Defendant's arguments about the status and legal significance of the <u>Robinson</u> injunction are

6   outside the scope of Rule 12(b)(6) review.

7          Because the present complaint fails to identify the specific acts of defendant

8   Virga that violated plaintiff's rights, or to identify an unconstitutional policy implemented by

9   Virga, the undersigned will recommend granting the motion to dismiss with leave to amend.  If

10  plaintiff chooses to amend the complaint, he must allege in specific terms how Warden Virga's

11  actions resulted in the violation of his rights.  <u>See</u> <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>May v.</u>

12  <u>Enomoto</u>, 633 F.2d 164, 167 (9th Cir. 1980); <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir.

13  1978).  In light of Ninth Circuit precedent, leave to amend should encompass plaintiff's religious

14  exercise claim as broadly construed to include both a cause of action under 42 U.S.C. § 1983 for

15  violation of First Amendment rights and a cause of action under the Religious Land Use and

16  Institutionalized Persons Act of 2000 ("RLUIPA").  <u>See</u> <u>Alvarez v. Hill</u>, 518 F.3d 1152, 1157

17  (9th Cir. 2008) (prisoner complaint alleging burdens on religious practice presents a RLUIPA

18  claim even if the statute is not cited and the complaint states single cause of action under First

19  Amendment).  If he chooses to amend, plaintiff may separately state his claims against both

20  defendants under § 1983 and RLUIPA.

21                          <u>QUALIFIED IMMUNITY</u>

22          In resolving a claim for qualified immunity the court addresses two questions: (1)

23  whether the facts, when taken in the light most favorable to plaintiff, demonstrate that the

24  officers' actions violated a constitutional right, and (2) whether a reasonable officer could have

25  believed that his conduct was lawful, in light of clearly established law and the information the

26  officer possessed. <u>Anderson v. Creighton</u>, 483 U.S. 635 (1987).  These questions may be

8

1    addressed in the order that makes the most sense given the circumstances of the case.  Pearson v.

2    Callahan, 555 U.S. 223 (2009).

3          "A right is clearly established for purposes of qualified immunity if, at the time

4    the right was allegedly violated, its contours were 'sufficiently clear that a reasonable official

5    would understand that what he was doing violates that right.'"  May v. Baldwin, 109 F.3d 557,

6    561 (9th Cir. 1997) (quoting Anderson, 483 U.S. at 640).  To demonstrate a clearly established

7    right, there need not be "precedent directly on point."  Jensen v. City of Oxnard, 145 F.3d 1078,

8    1085 (9th Cir. 1998).  In other words, " "[i]f the only reasonable conclusion from binding

9    authority were that the disputed right existed, even if no case had specifically so declared, prison

10   officials would be on notice of the right and officials would not be qualifiedly immune if they

11   acted to offend it."  Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

12         At the time of the alleged constitutional violations, it had been long established

13   that prisoners retained the protections of the First Amendment's free exercise clause.  O'Lone v.

14   Estate of Shabazz, 482 U.S. 342, 348 (1987).   Moreover, it had long been well established in the

15   Ninth Circuit that prisoners "have a right to be provided with food sufficient to sustain them in

16   good health that satisfies the dietary laws of their religion. . . ."  McElyea v. Babbitt, 833 F.2d

17   196, 198 (9th Cir.1987).   Of course, the fact of incarceration and attendant needs for

18   institutional security gives rise to limitations upon the exercise of constitutional rights.  O'Lone,

19   482 U.S. at 348.  Thus, prison regulations that infringe constitutional rights are evaluated under a

20   test of  "reasonableness."  Id. at 349.   The appropriate standard is set forth in Turner v. Safley:

21   "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it

22   is reasonably related to legitimate penological interests."  Id. (quoting Turner, 482 U.S., 72, 89

23   (1987).  See Malik v. Brown, 16 F.3d 330 (9th Cir. 1994).

24         There can be little question that defendants' conceded failure to provide plaintiff

25   with a kosher diet implicates his First Amendment rights.  See McElyea, 833 F.2d at 198.

26   Defendants contend that they are nonetheless entitled to qualified immunity because their actions

9

1   were in compliance with 15 Cal. Code Regs. §§ 3054-3054.5.  The regulation governing

2   provision of " "Jewish Kosher Diet" provides in relevant part as follows:

3           (a) Jewish kosher meals shall be available at designated
            institutions. Jewish inmates may participate in the program, as
4           determined by a Jewish Chaplain.

5           (b) Jewish inmates with unmet kosher dietary needs may, when
            classification is appropriate, be considered for transfer to another
6           institution that can provide the Jewish inmate with a kosher diet.

7   15 Cal. Code Regs. § 3054.2.

8           The parties agree that plaintiff was denied kosher meals because Rabbi Korik

9   determined that plaintiff was not Jewish and therefore did not qualify for such meals.   Whether

10  plaintiff qualified as a Jew for the religious accommodations designed for Jewish inmates,

11  however, is irrelevant to the constitutional question presented in this case and therefore to the

12  qualified immunity issue.  The issue in this case is whether plaintiff was denied "food sufficient

13  to sustain [him] in good health and satisfy the dietary laws of [*his*] religion."  McElyea, 833 F.2d

14  at 198 (emphasis added).  Plaintiff describes himself as a follower of Yahweh and adherent of

15  the House of Yahweh Yahdaim.  He claims that his religious belief requires him to observe

16  dietary restrictions that would be satisfied by a kosher diet.  The First Amendment requires

17  prison officials to provided a diet appropriate to the inmate's sincere religious belief, not one

18  appropriate to the institution's determination of appropriate religious observance.  See Shakur v.

19  Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (affirming ongoing vitality of the "sincerity test").

20          Failure to provide a religiously appropriate diet must be justified by legitimate

21  penological interests, as evaluated under the four-factor Turner test.  Id. at 884 (quoting Turner,

22  482 U.S. 78).[4]  The Ninth Circuit has specifically held that the failure to provide a kosher diet to

23

24          [4] Those factors are: (1) Whether there is a valid, rational connection between the prison
    regulation and the legitimate governmental interest put forward to justify it; (2) Whether there
25  are alternative means of exercising the right that remain open to prison inmates; (3) Whether
    accommodation of the asserted constitutional right will impact guards and other inmates, or

26                                                                              (continued...)

                                             10

a non-Jewish prisoner, if the inmate's sincere religious beliefs require such a diet, violates the

First Amendment unless justified under <u>Turner</u>.  <u>Id.</u> at 885 (prison's refusal to provide kosher

meat to Muslim inmate, as substitute for Halal meat, implicates First Amendment).  <u>Shakur</u> was

binding authority in this Circuit at the time of the incidents at issue here.  Accordingly, prison

officials should have known that kosher meals for a non-Jew who claims a religious need for

such meals could only be denied  on the basis of countervailing and legitimate penological

interests.  The record before the court at this stage of the proceedings does not permit evaluation

of the <u>Turner</u> factors.  <u>Cf.</u> <u>Shakur</u>, 514 F.3d at 887-88 (reversing summary judgment for

defendants and remanding for further fact-finding regarding <u>Turner</u> factors).

   A dismissal on grounds of qualified immunity on a Rule 12(b)(6) motion is not

appropriate unless it can be determined "based on the complaint itself, that qualified immunity

applies."  <u>Groten v. California</u>, 251 F.3d 844, 851 (9th Cir.2001); <u>Rupe v. Cate</u>, 688 F. Supp.2d

1035, 1050 (E.D. Cal. 2010) (court denied defendants' claim of qualified immunity where it was

not clearly applicable and on face of complaint but stated the ground could be raised on

summary judgment).  Here, it cannot be determined based on the complaint itself that qualified

immunity applies.  The questions whether a constitutional right was violated and whether a

reasonable official would have recognized that denial of kosher meals to plaintiff was

unconstitutional turn on facts that remain to be developed.  Accordingly, the motion to dismiss

on qualified immunity grounds should be denied without prejudice to renewal on summary

judgment.

INJUNCTIVE RELIEF

   The complaint presents claims arising from plaintiff's incarceration at CSP-

Sacramento.  The docket reflects that plaintiff is now housed at Salinas Valley State Prison.

---

   [4](...continued)
allocation of prison resources generally; and (4) Whether there is an absence of ready
alternatives versus the existence of obvious, easy alternatives.  <u>Id.</u>

1    Accordingly, the undersigned raises sua sponte the apparent mootness of the claim for injunctive
2    relief.

3          Injunctive relief may be had only against a defendant who is in a position to
4    prospectively provide such relief.   Harrington v. Grayson, 764 F. Supp. 464, 475-477 (E.D.
5    Mich. 1991).  When an inmate seeks injunctive relief concerning an institution at which he is no
6    longer incarcerated, his claims for such relief therefore become moot.  See  Sample v. Borg, 870
7    F.2d 563 (9th Cir. 1989); Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986); see also
8    Reimers v. Oregon, 863 F.2d 630, 632 (9th Cir. 1988).  Neither of the named defendants in this
9    case are in a position to respond to a court order on prospective injunctive relief, as neither
10   control conditions at Salinas Valley State Prison.  The complaint accordingly fails to support a
11   claim for injunctive relief.

12         A plaintiff seeking injunctive relief must have Article III standing to seek an
13   injunction by showing "a real and immediate threat that the plaintiff will be wronged again" in a
14   similar way.  City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); Easyriders Freedom
15   F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1495 (9th Cir.1996) ("The requirements for the issuance
16   of a permanent injunction are 'the likelihood of substantial and immediate irreparable injury and
17   the inadequacy of remedies at law.' ") (internal citations omitted); David v. Giurbino, 488 F.
18   Supp. 2d 1048, 1056 (S.D. Cal. 2007) ("To prevail on his request for injunctive relief, Plaintiff
19   must demonstrate the likelihood of irreparable injury and the inadequacy of legal remedies.").
20   Plaintiff makes no showing that he is likely to be transferred back to CSP-Sac and, if so, that he
21   would be subject to the same alleged violations.  Plaintiff's request for relief in the form an
22   injunction therefore must be dismissed.

23         Accordingly, IT IS ORDERED that the Clerk of the Court make a random
24   assignment of a district judge to this case.

25         IT IS HEREBY RECOMMENDED that:

26         1.  Defendants' motions to dismiss (ECF Nos. 14 and 22) be denied with

                                          12

1    prejudice on the ground that the complaint is barred by the statute of limitations;

2          2.  Defendant Virga's motion to dismiss for failure to state a claim (ECF No. 14)

3    be granted, but plaintiff be granted leave to amend within twenty-eight days of adoption of these

4    findings and recommendations;

5          3.  Plaintiff be granted leave to amend to state a claim under the Religious Land

6    Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1, also within

7    twenty-eight days of adoption of these findings and recommendations ;

8          4.  Defendant' motions to dismiss on grounds of qualified immunity be denied but

9    without prejudice;

10         5.  Plaintiff's claims for prospective injunctive relief as to both defendants be

11    dismissed as moot; and

12         6.  This matter proceed only on plaintiff's claim for damages.

13         These findings and recommendations are submitted to the United States District

14    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

15    one days after being served with these findings and recommendations, any party may file written

16    objections with the court and serve a copy on all parties.  Such a document should be captioned

17    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

18    shall be served and filed within fourteen days after service of the objections.  The parties are

19    advised that failure to file objections within the specified time may waive the right to appeal the

20    District Courts order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21    DATED: June 11, 2013

22

23                           ALLISON CLAIRE

                            UNITED STATES MAGISTRATE JUDGE

24    AC:009

     alle1583.mtds

25

26