UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN ALLEN,<br><br>            Plaintiff,<br><br>     v.<br><br>T. VIRGA, et al.,<br><br>            Defendants. | No. 2:12-cv-1583 TLN AC P<br><br>ORDER & FINDINGS AND <u>RECOMMENDATIONS</u> |

Plaintiff is a California inmate proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on plaintiff's second amended complaint, ECF No. 49, for violations of plaintiff's rights under the First Amendment and RLUIPA.[1] Pending before the court are: (1) a motion to dismiss brought by defendants Virga and Korik, ECF No. 52; (2) plaintiff's "motion for an order rescinding [the court's] 6/11/13 ruling," ECF No. 57; and (3) plaintiff's motion for a court order for release of his legal property, ECF No. 53.

I.      <u>Background</u>

Plaintiff's original complaint alleged that Warden Virga and Rabbi Korik violated plaintiff's First Amendment right to practice his religion when they denied plaintiff a kosher diet. Defendants Virga and Korik brought motions to dismiss plaintiff's original complaint, which

---

[1] Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-1.

1

were granted in part and denied in part by order dated June 12, 2013.  The motions to dismiss on statute of limitations grounds were denied with prejudice, and the motions to dismiss based on qualified immunity were denied without prejudice to renewal on summary judgment.  Defendant Virga's motion to dismiss for failure to state a claim was granted, but plaintiff was given leave to amend.  Plaintiff was also given leave to amend to state a claim under RLUIPA.

Plaintiff subsequently filed a first amended complaint, which stated colorable claims against defendant Virga for violations of plaintiff's rights under the First Amendment and RLUIPA.  However, because plaintiff failed to identify Korik as a party, plaintiff's first amended complaint was dismissed with leave to amend.

On November 14, 2013, plaintiff filed a second amended complaint which stated colorable First Amendment and RLUIPA claims against defendants Virga and Korik.  By order dated April 4, 2014, the court directed defendants to answer plaintiff's second amended complaint.  On May 5, 2014, defendants filed a motion to dismiss plaintiff's second amended complaint.  Plaintiff filed an opposition to defendants' motion on May 27, 2014 and on June 3, 2014, defendants replied.

II.     Defendants' Motion to Dismiss

Defendants move to dismiss plaintiff's second amended complaint on the grounds that (1) plaintiff failed allege sufficient facts to state a claim upon which relief can be granted, and (2) defendants are entitled to qualified immunity.  ECF No. 52-1 at 2.

A. Legal Standard for Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556

2

1   U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when
2   the plaintiff pleads factual content that allows the court to draw the reasonable inference that the
3   defendant is liable for the misconduct alleged." Id.
4       In considering a motion to dismiss, the court must accept as true the allegations of the
5   complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976),
6   construe the pleading in the light most favorable to the party opposing the motion and resolve all
7   doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S.
8   869 (1969).  The court will "'presume that general allegations embrace those specific facts that
9   are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510
10  U.S. 249, 256 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).
11  Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.
12  Haines v. Kerner, 404 U.S. 519, 520 (1972).
13      The court may consider facts established by exhibits attached to the complaint.  Durning
14  v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts
15  which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388
16  (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed
17  with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).  The
18  court need not accept legal conclusions "cast in the form of factual allegations."
19      B.  Plaintiff's Allegations[2]
20      Plaintiff is an inmate in the custody of the California Department of Corrections and
21  Rehabilitation (CDCR), and was incarcerated at California State Prison-Sacramento (CSP-Sac) at
22  the time of the alleged violations.  ECF No. 49 at 2.  At this time, defendant Korik was the rabbi
23  assigned to CSP-Sac and defendant Virga was the warden.  Id. at 2, 3.
24      The exhibits attached to plaintiff's complaint indicate that plaintiff has been a follower of

---

[2] The court relies only the allegations contained in plaintiff's second amended complaint, ECF No. 49, and the attached exhibits.  See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  To the extent plaintiff alleges new facts in his opposition to defendants' motion to dismiss, the court has not considered them here.

Yahweh (HOYY) since 2001.  ECF No. 49 at 17.  As a HOYY adherent, plaintiff must follow Yahweh's dietary laws, which "are about knowing which animals are clean and unclean" in order to avoid eating unclean foods that defile the body.  Id.  Under these dietary laws, plaintiff can only drink milk from clean animals.  Id.  Followers of Yahweh do not use milk or milk products purchased from stores because of the "uncleanliness which enters [milk] by the dairy farms."  Id.

Following plaintiff's arrival at CSP-Sac, plaintiff submitted five appeal forms and six request forms seeking an interview with a Jewish Chaplain and access to the Jewish Kosher Diet Program (JKDP), ECF No. 49 at 3, 17, the only meal program available in the CDCR that is similar to the diet requirements of HOYY adherents, ECF No. 49 at 8.  After initially receiving no response, plaintiff sent two requests to the warden "about the rabbi and the appeal person" not responding to his requests and appeals.  Id. at 17, 19.  Plaintiff was subsequently interviewed by Rabbi Korik concerning his request for access to the JKDP.[3]  Id. at 3, 48.

During the interview, Rabbi Korik told plaintiff that he could not have the kosher meals because he is not Jewish.  ECF No. 49 at 47-48.  Plaintiff "became more insistent in explaining the dietary requirements of [his] religious beliefs and [his] need of access to the [JKDP] because it was the only diet that closely resembled the diet required by [his] faith."  Id. at 48.  In response, Korik told plaintiff that he could not have the JKDP because plaintiff's religion "isn't a righteous religion."  Id.

Plaintiff then showed Korik an order in the case of Robinson v. Delgado[4] and explained that Robinson practices the same religion as plaintiff and is allowed to have a kosher diet at CSP-Sac despite not being Jewish.  ECF No. 49 at 48.  Korik snatched the order from plaintiff, glanced at it briefly, and yelled, "I don't give a fuck about this case."  Id.  Korik repeated that plaintiff "wasn't getting the kosher diet."  Id.

After Korik denied plaintiff's request, plaintiff filed an appeal seeking access to the JKDP. ECF No. 49 at 4.  Plaintiff's appeal was denied.  Id.

---

[3] Plaintiff's exhibits include a copy of his first level appeal decision, which indicates that the interview with Rabbi Korik occurred on February 7, 2011.  ECF No. 49 at 21.
[4] No. 1:02-cv-1538 NJV (N.D. Cal. 2008).

4

In response to plaintiff's appeal, Warden Virga assigned a correctional counselor to conduct an inquiry into plaintiff's request for a kosher diet. ECF No. 49 at 4. Warden Virga subsequently denied plaintiff's request based on the counselor and Rabbi Korik's findings. Id. In denying plaintiff's request, Virga stated that he had closely reviewed the matter and "determined that staff acted appropriately and in accordance with state law, the CCR, and the DOM." Id. at 4-5. Plaintiff alleges that at the time Korik and Virga denied his request for a kosher diet, they were aware of previous court rulings which allowed non-Jewish prisoners to have access to the JKDP. Id. at 9.

Plaintiff alleges that "a kosher meal is part of [his] beliefs." ECF No. 49 at 19. By denying plaintiff access to the JKDP, plaintiff alleges that defendants Virga and Korik "forced . . . plaintiff to engage in conduct prohibited by his sincerely held religious beliefs;" required plaintiff to "modify his behavior in violation of his genuinely held religious beliefs;" and denied plaintiff "a reasonable opportunity to engage in an activity fundamental to the practice of his religion." Id. at 8, 10.

Plaintiff seeks nominal and punitive damages, his costs in this lawsuit, a jury trial, and a declaration that defendants violated his constitutional rights. ECF No. 49 at 11-12.

C. RLUIPA

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on the person –
>
> (1) is in furtherance of a compelling government interest; and
>
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. 2000cc-1.

////

////

////

1   The Ninth Circuit has held that money damages are not available under RLUIPA against state officials sued in their official capacities.[5] Alvarez v. Hill, 667 F.3d 1061, 1063 (9th Cir. 2012). Rather, a claim against prison officials acting within their official capacities may only proceed under RLUIPA for injunctive relief. Here, plaintiff sues defendants in their official capacities for violations of RLUIPA and seeks declaratory relief and money damages. ECF No. 49 at 3, 11-12. Because plaintiff does not seek injunctive relief, plaintiff has failed to state a cognizable claim under RLUIPA. See Alvarez, 667 F.3d at 1063. Accordingly, plaintiff's claims against both defendants for violations of plaintiff's rights under RLUIPA should be dismissed.

### D.  First Amendment

"Inmates clearly retain protections afforded by the First Amendment… including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal citations omitted). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Id. Thus, in order to establish a free exercise violation, plaintiff must show defendants burdened the practice of his religion, without justification reasonably related to legitimate penological interests, by preventing him from engaging in conduct that is (1) based on a "sincerely held" religious concern and (2) "rooted in religious belief" rather than in secular philosophical concerns. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994)). "In order to reach the level of a constitutional violation, the interference with one's practice of religion must be more than an inconvenience; the burden must be substantial…." Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (internal quotation marks and citation omitted), overruled in part on other grounds by Shakur, 514 F.3d at 884−85.

Defendants do not dispute that plaintiff's religious beliefs are sincerely held or contend that plaintiff's claim is not rooted in religion. Nor do defendants argue that their actions were

---

[5] Damages are likewise unavailable under RLUIPA for suits brought against prison officials in their individual capacities. Wood v. Yordy, 753 F.3d 899, 901 (9th Cir. 2014).

1  justified by legitimate penological interests.  See Shakur, 514 F.3d at 885-86.  Rather, defendants
2  contend that they did not interfere with plaintiff's religious exercise when they denied him access
3  to the JKDP because plaintiff had the option of eating the religious vegetarian diet, which he
4  could consume without violating his religious beliefs.  ECF No. 52-1 at 7.  In support of this
5  argument, defendants claim that plaintiff "conceded that vegetarian meals could comply with his
6  religious dietary restrictions" and that plaintiff "ate a vegetarian diet at two other prisons since at
7  least 2001 without any effect on his religious exercise."  ECF No. 52-1 at 7.
8       Defendants' claims are unsupported by the record.  The exhibits attached to the complaint
9  reveal only that plaintiff ate a vegetarian diet while at Pelican Bay prison because "they did not
10  have a rabbi[,] so the only option [plaintiff] had was a vegetarian meal."  ECF No. 49 at 19.  This
11  implies that plaintiff ate a vegetarian diet while at Pelican Bay because a kosher diet was not
12  available.  It does not, as defendants argue, demonstrate that eating a vegetarian diet was
13  consistent with plaintiff's religious beliefs, see Haines v. Kerner, 404 U.S. at 520 (pro se
14  complaints are liberally construed in the plaintiff's favor), and plaintiff makes no such
15  concession.  Moreover, plaintiff's allegation that denial of access to the JKDP forced him to
16  engage in conduct prohibited by his religion gives rise to the inference that the vegetarian diet
17  available to plaintiff was not consistent with the dietary restrictions of his religion.  Plaintiff's
18  specific concern with the religious purity of dairy products, ECF No. 49 at 17, suggests that a diet
19  devoid of meat would not necessarily meet his religious needs.  Accordingly, plaintiff's
20  consumption of the vegetarian diet could substantially burden plaintiff's religious exercise.  See
21  Thomas v. Review Bd. of Indiana Employment Sec. Div., 450 U.S. 707, 717-18 (1981) (a
22  substantial burden exists where the state "put[s] substantial pressure on an adherent to modify his
23  behavior and to violate his beliefs).
24       Plaintiff specifically alleges that "a kosher meal is part of [his] beliefs" and that the "only
25  diet" similar to that required by his religion was the JKDP.  Construed in the light most favorable
26  to plaintiff, plaintiff's claim that he sincerely believed that he had to eat a kosher diet in order to
27  comply with his religious beliefs sufficiently alleges that defendants substantially burdened his
28  religious exercise when they denied him access to a kosher diet.  See Shakur v. Schriro, 514 F.3d

878, 885 (9th Cir. 2008) ("Given [plaintiff's] sincere belief that he is personally required to consume kosher meat to maintain his spirituality, we are satisfied, as a threshold matter, that the prison's refusal to provide a kosher meat diet implicates the Free Exercise Clause."). Plaintiff's allegations are sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 554. Accordingly, the undersigned finds that plaintiff's second amended complaint states a cognizable claim for a violation of the First Amendment.

### E. Warden Virga's Supervisory Liability

Defendants contend that plaintiff failed to state a First Amendment claim against Warden Virga because Virga holds a supervisory position and the facts alleged in the complaint do not provide a sufficient basis for attaching supervisory liability to Virga. Specifically, defendants argue that while plaintiff sues Virga in his individual capacity and references Virga primarily in his capacity as a supervisor, the complaint is deficient because plaintiff failed to allege that Virga caused or personally participated in the deprivation of plaintiff's rights. ECF No. 52-1 at 4-6.

Under 42 U.S.C. § 1983, "supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989). Section 1983 liability "arises only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Therefore, "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to prevent them." Id.

Plaintiff's claim against Virga is not based solely on his allegation that, as warden, Virga is legally responsible for the operation of CSP-Sac and the welfare of the prisoners. Rather, plaintiff alleges that Virga "participated in Rabbi's Korik's illegal affirmative acts" and is therefore personally liable to plaintiff for the resulting violations of his constitutional rights. ECF No. 49 at 9. Specifically, plaintiff alleges that when he received no response to his initial requests to meet with Rabbi Korik, plaintiff sent two requests to the warden regarding the lack of response. Id. at 17, 19. After plaintiff met with Korik and Korik denied his request for access to the JKDP, Virga assigned a correctional counselor to inquire into plaintiff's request. Id. at 3, 4, 48. At this time, Virga was aware of previous court rulings allowing non-Jewish prisoners to

access the JKDP and therefore had notice that denying an HOYY adherent access to a kosher diet was unconstitutional.[6] Id. at 9.  Nevertheless, after reviewing Rabbi Korik and the counselor's findings, Virga determined that staff had acted appropriately and subsequently denied plaintiff's request for a kosher diet.  ECF No. 49 at 4.

Liberally construed in plaintiff's favor, the complaint alleges, in sum, that Virga knew that plaintiff was a follower of Yahweh and had been denied access to the JKDP; that Virga knew that such a denial was unconstitutional; and that Virga personally upheld the decision to deny plaintiff a kosher diet, despite his knowledge that such an act would violate plaintiff's rights.  The complaint sufficiently alleges that Warden Virga knew of a constitutional violation and failed to act to prevent it, thereby personally participating in the deprivation of plaintiff's rights.  Accordingly, the undersigned finds that plaintiff has stated a cognizable claim against Warden Virga in his supervisory capacity.  See Taylor v. List, 880 F.2d at 1045.  Defendants' motion to dismiss plaintiff's claims against defendant Virga for failure to state a claim upon which relief can be granted should be denied.

### F. Qualified Immunity

In resolving a claim for qualified immunity the court addresses two questions: (1) whether the facts, when taken in the light most favorable to plaintiff, demonstrate that the officers' actions violated a constitutional right, and (2) whether a reasonable officer could have believed that his conduct was lawful, in light of clearly established law and the information the officer possessed.  Anderson v. Creighton, 483 U.S. 635 (1987).  These questions may be addressed in the order that makes the most sense given the circumstances of the case.  Pearson v.Callahan, 555 U.S. 223 (2009).

Defendants claim that they are entitled to qualified immunity with respect to the above

---

[6] Specifically, plaintiff alleges that the case of Robinson v. Delgado, no. 1:02-cv-1538 NJV (N.D. Cal. 2008), put defendants on notice that HOYY adherents at CSP-Sac were to be given access to a kosher diet pursuant to a federal court order and permanent injunction issued to Matthew Cate, the former CDCR Secretary.  ECF No. 49 at 5, 9, 48.  Plaintiff appears to allege that defendants received notice of these rulings from "CDCR's Secretary and the Attorney General's Office."  Id. at 9.

claims. ECF No. 52-1 at 9-12. In support of their argument, defendants raise many of the same points addressed in this court's June 12, 2013 order, ECF No. 37, in which defendants' prior motion to dismiss on qualified immunity grounds was denied without prejudice to renewal on summary judgment.[7] To the extent that defendants re-allege that qualified immunity applies because defendants complied with CDCR policy in denying plaintiff access to a kosher diet because he is not Jewish, their claim is denied for the same reasons articulated in the court's June 12, 2013 order, ECF No. 37 at 9-11.[8]

Defendants' only new argument is that plaintiff's case is similar to that of Pogue v. Woodford, 2009 WL 2777768 *15-16 (E.D. Cal. Aug. 36, 2009), in which the court found that the defendants were entitled to qualified immunity.[9] ECF No. 52-1 at 11-12. Defendants quote the following language from Pogue:

> Plaintiff was not simply told to eat what was placed before him; he was told that he could have a religious vegetarian diet which would not contradict his religious tenets. There is no dispute in this case that the Muslim religion does not *require* the eating of certain foods; it simply requires that some foods be processed in a particular way, and pork products are off limit[s] no matter how processed. The court finds that the nuanced claim qualifies for qualified immunity.

Pogue, WL 2777768 at *16. Defendants argue that like in Pogue, plaintiff had a religious vegetarian diet available to him that would not contradict his religious beliefs. ECF No. 52-1 at 11-12. However, the record in this case does not support defendants' argument. As discussed previously, plaintiff never conceded that the vegetarian diet complied with his religious dietary requirements. To the contrary, plaintiff alleged that the JKDP was the only diet similar to the

---

[7] The June 12, 2013 findings and recommendations were adopted in full by the district judge on September 16, 2013. ECF No. 43.

[8] In sum, the court concluded that pursuant to Shakur v. Schriro, 514 F.3d 878, prison officials should have known that "kosher meals for a non-Jew who claims a religious need for such meals could only be denied on the basis of countervailing and legitimate penological interests," and that the question of whether qualified immunity applied could not be determined without further factual development. ECF No. 37 at 10-11.

[9] This argument was not raised in the prior motion to dismiss and was not addressed in the court's June 12, 2013 order.

1  dietary requirements of his religion.  Because the parties dispute whether the religious vegetarian
2  diet complies with plaintiff's religious beliefs as a HOYY adherent, this case is distinguishable
3  from Pogue.  Furthermore, to the extent defendants argue that plaintiff's complaint does not make
4  clear "that kosher meat is absolutely required by his religion," ECF No. 52-1 at 12, this
5  contention is offset by plaintiff's allegation that "a kosher meal is part of [his] beliefs," ECF No.
6  49 at 19.

7       A dismissal on grounds of qualified immunity on a Rule 12(b)(6) motion is not
8  appropriate unless it can be determined "based on the complaint itself, that qualified immunity
9  applies".  Groten v. California, 251 F.3d 844, 851 (9th Cir.2001); Rupe v. Cate, 688 F. Supp.2d
10  1035, 1050 (E.D. Cal. 2010) (court denied defendants' claim of qualified immunity where it was
11  not clearly applicable and on face of complaint but stated the ground could be raised on summary
12  judgment).  Here, the questions of whether a constitutional right was violated and whether a
13  reasonable official would have recognized that denial of kosher meals to plaintiff was
14  unconstitutional turn on facts that remain to be developed.  Because it cannot be determined on
15  the face of the complaint that qualified immunity applies, the undersigned recommends that
16  defendants' motion to dismiss on qualified immunity grounds be denied without prejudice to
17  renewal on summary judgment.

18       III.    Plaintiff's Motion to Rescind the June 11, 2013 Ruling

19       On July 25, 2014, plaintiff filed a motion titled "motion for order rescinding courts [*sic*]
20  6/11/13 ruling." ECF No. 57.  However, plaintiff's request appears to challenge not the court's
21  order but whether it was proper for defendants to file a motion to dismiss plaintiff's second
22  amended complaint.  Specifically, plaintiff argues that because he "won" the motion to dismiss
23  addressed in the court's June 12, 2013 ruling,[10] defendants should not be permitted to file another

---

[10] Plaintiff refers to the "June 11, 2013 order," but the actual filing date was June 12, 2013.  See ECF No. 37.  In the June 12, 2013 Order and Findings and Recommendations, the undersigned recommended that defendants' motion to dismiss plaintiff's original complaint on statute of limitations grounds be denied with prejudice; that defendants' motion to dismiss the complaint on qualified immunity grounds be denied but without prejudice; and that defendant Virga's motion to dismiss for failure to state a claim be granted with leave to amend.  Plaintiff was also granted (continued…)

11

motion to dismiss and instead should have filed a motion for summary judgment. ECF No. 57 at 1-2.

Plaintiff is correct that defendants have filed more than one motion to dismiss in this case. However, defendants' initial motions to dismiss, ECF No. 14 and ECF No. 22, sought dismissal of plaintiff's original complaint, ECF No. 1. The current action proceeds on plaintiff's second amended complaint, ECF No. 49, which supersedes plaintiff's original complaint. See Lacey v. Maricopa County, 693 F.3d 896, 927 (9th Cir. 2012) ("the general rule is that an amended complaint super[s]edes the original complaint and renders it without legal effect"). Defendants must therefore be given an opportunity to answer the second amended complaint. See Fed.R.Civ.P. Rule 12(a) (after being served with a summons or complaint, a defendant must file a responsive pleading within 21 days); Rule 12(b) (a motion to dismiss for failure to state a claim upon which relief can be granted must be made before pleading if a responsive pleading is allowed). Accordingly, defendants' motion to dismiss plaintiff's second amended complaint is properly before the court. Plaintiff's request is therefore denied.

IV.   Plaintiff's Motion for Release of Legal Property

Plaintiff is currently incarcerated at Salinas Valley State Prison. On May 14, 2014, plaintiff filed a motion requesting that the court order the prison to release plaintiff's legal property. ECF No. 53. Plaintiff states that he is in administrative segregation and does not have access to his legal work. Plaintiff is concerned that if he needs to file objections to the magistrate judge's findings and recommendations, he will not able to meet the deadline. ECF No. 53 at 1-2.

As the undersigned recommends that defendants' motion to dismiss be denied, the court does not anticipate that plaintiff will file objections to the present findings and recommendations. However, counsel for defendants is directed to take all steps necessary to aid plaintiff in timely obtaining access to the legal property he needs in order to file objections, should he choose to do so.

---

leave to amend to state a claim under RLUIPA. ECF No. 37. The district judge adopted these findings and recommendations in full on September 16, 2013. ECF No. 43.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's request for a court order "rescinding the 6/11/13 findings and recommendations" (ECF No. 57) is denied; and

2. Plaintiff's request for a court order regarding release of his legal property (ECF No. 53) is granted to the extent that defense counsel is directed to assist plaintiff in obtaining the relevant legal documents, and otherwise denied.

IT IS FURTHER RECOMMENDED that:

1. Defendants' motion to dismiss plaintiff's second amended complaint (ECF No. 52) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 25, 2015

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE